IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS AROCHO and ALBERT Rodriquez, | : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | NO. 03-5081 |
| CORPORAL M. C. WITMAN, ET AL., | : : | |
| Defendants. | : : | |

## MEMORANDUM AND ORDER

Presently before this Court is Defendant Corporal M.C. Witman's Motion for Summary Judgment (Doc. 14). For the reasons set forth herein, upon consideration of Defendant's Motion, Plaintiff's Response (Doc. 17) and Defendant's Reply (Doc. 20), this Court will grant Defendant's Motion for Summary Judgment.

### I. PROCEDURAL BACKGROUND

This action was originally brought by co-Plaintiffs, Luis Arocho and Albert Rodriquez. On September 14, 2005, Defendant filed an uncontested Suggestion of Death pertaining to Plaintiff Albert Rodriquez pursuant to Fed. R. Civ P. 25(a)(1). Accordingly, this Court dismissed Plaintiff Rodriquez on September 29, 2006, and thus only Plaintiff Luis Arocho remains.

### II. BACKGROUND

The record reveals the following undisputed facts. On September 9, 2001, Plaintiffs, Alberto Rodriquez and Luis Arocho were traveling east on Route 78, Pennsylvania when they were pulled over by Defendant, Corporal Michael Witmer.[1] Defendant, then a sergeant in the Pennsylvania State Police, was stationed at Troop L headquarters in Reading, Pennsylvania and

---

[1] It remains unclear who was operating the vehicle, however the record seems to indicate decedent, Albert Rodriquez, the owner of the car, was the driver.

was assigned to the Interstate 78 construction area.  After pulling the vehicle over, Defendant ordered Plaintiff and decedent out of the car and ordered them to stand on the shoulder of the road.  At that time, another police officer, who remains unidentified, arrived at the scene and, according to Arocho, guarded Arocho and Rodriquez while Defendant searched the car.  Soon thereafter, a tow truck arrived and Rodriquez contacted his lawyer.  Witmer then instructed the tow truck driver to leave and released Arocho, Rodriquez, and their vehicle.  The encounter lasted 30-45 minutes.

**A.     Facts as Presented by Defendant**

According to Defendant, the Interstate 78 construction area was an aggressive patrol assignment, which including running radar and issuing citations.  Defendant Witmer states that he pulled Rodriquez and Arocho over because the car did not have an inspection sticker on the driver's side windshield.  The vehicle displayed a temporary Pennsylvania registration plate but Pennsylvania law requires that automobiles display an official inspection sticker as well.  The law provides a grace-period of ten (10) days from the date of purchase for newly purchased vehicles.  Rodriquez purchased the vehicle on August 31, 2001 and displayed a temporary registration form in the rear window of his vehicle.  However, since the vehicle did not exhibit an official inspection sticker in the left side front windshield as required by law, Corporal Witmer pulled over Arocho and Rodriquez.  Witmer avers that he had no way of knowing the vehicle was newly purchased.

According to Corporal Witmer, after getting the paperwork from Rodriquez, he noticed that the vehicle identification number ("VIN") on the paperwork did not match the VIN on the car, which was visible through the front windshield.  Witmer also noticed that the date of insurance was before the car's date of purchase.  Upon his suspicion that the car was possibly stolen, Witmer

radioed the desk at the Hamburg station to have the VIN checked. While waiting for the computer check, Witmer claims that he decided to look in the vehicle at the other locations where the VIN is located to verify the correct number because VIN numbers are located on several locations on the car including the dashboard, the inside door panel, and the engine compartment. In order to look at the seatbelt and inside the door frames for the VIN, Witmer asked Rodriquez and Arocho to step out of the car. Witmer then called for back up while he looked within the vehicle. Although two other officers arrived, Witmer states that he does not remember their names, and the names could not be ascertained through an investigation conducted by the Pennsylvania State Police.

Since, according to Witmer, he suspected that the vehicle was stolen and intended to impound the vehicle if he could not confirm ownership, he requested a tow truck. Witmer's VIN request resulted in confirmation of ownership. Defendant avers that the check may have taken "some time" because the vehicle was purchased in another state and the request had to be made through the other state. When ownership was confirmed, Witmer sent the tow truck driver away, apologized to Arocho and Rodriquez, and told them that they were free to go.

**B.      Facts as Presented by Plaintiff**

Arocho's version of the facts largely mirrors Defendant's version. However Arocho alleges the stop was prompted by Defendant's engagement in racial profiling. Arocho also alleges that there was no proper reason to stop the vehicle, order him out of the car, or take him into custody and place him under guard. Plaintiff further maintains that when he and Rodriquez were ordered out of their car, Defendant "made a snide remark" that there was something wrong with the car. Arocho also contends that he and Rodriquez were released only after a John Doe police officer informed Witmer that he overheard Arocho talking to his lawyer.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the

4

movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### IV.  DISCUSSION

Plaintiff Arocho's complaint alleges that he was a victim of racial profiling in enforcement of motor vehicle laws, which violates his right to due process and equal protection under the Fourteenth Amendment. Arocho also alleges, pursuant to 42 U.S.C. § 1983, that by searching the vehicle in which he traveled without probable cause, Defendant violated his Fourth Amendment right to be free from unreasonable searches and seizures. Arocho further asserts violations of his rights under the First Amendment, the Commerce Clause, and pursuant to 42 U.S.C. § 1985.

In his Motion for Summary Judgment, Defendant asks this Court to grant summary judgment on all of Arocho's claims, or in the alternative, Defendant requests that this Court grant qualified immunity. Arocho contends, however, that genuine issues of material fact preclude granting summary judgment in favor of the Defendant and his Motion for Summary Judgment should be denied. This Court will consider each of Witmer's arguments in turn.[2]

---

[2] In his Response to Defendant's Motion for Summary Judgment, Arocho concedes that he has not stated a claim that would support his allegation of violation of his rights under the First Amendment. Similarly, Arocho did not address Defendant's Motion for Summary Judgment on the Commerce Clause claim. As Plaintiff presents no issue of material fact on its First Amendment or Commerce Clause claim, this Court will grant Defendant's Motion on each of these two claims.

Arocho has also failed to assert a claim pursuant to 42 U.S.C. § 1985. To survive a motion for summary judgment Arocho must assert facts to establish: 1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. United Bd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983). Arocho alleges other officers were called to the scene and stood guard as

5

A.     **Fourth Amendment**

Arocho seems to allege three violations of the Fourth Amendment: (1) an investigatory stop made without reasonable suspicion; (2) an unconstitutionally lengthy detention; and (3) a search conducted without probable cause.  Compl. 22-23.

Where a police officer observes a violation of state traffic law, he may lawfully stop the vehicle and exercise superintendence over it and its passengers.  United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004) (citing Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977)).  Without any further particularized suspicion, the police officer may also order the driver out of the vehicle. Pennsylvania v. Mimms, 434 U.S. at 110-11; see also Bonner, 363 F.3d at 213.  Passengers may be ordered out of the vehicle as well.  Maryland v. Wilson, 519 U.S. 408; see also Bonner, 363 F.3d at 213.  Where a traffic stop is justified at its inception, a police officer who develops a reasonable articulable suspicion of criminal activity may expand the scope of his inquiry beyond the scope of the stop, and detain the vehicle and its occupants for further investigation.  United States v. Givan, 320 F.3d 452,458 (3d Cir. 2003) see also United States v. Arvizu, 534 U.S. 266, 274 (2002) (officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them...").  Where he undertakes a search, however, he must have probable cause to believe the search will result in discovery that a crime has been committed.  United States v. McGilroy, 968 F.2d 309, 343 (3d Cir. 1992)

---

Witmer searched Rodriquez's vehicle.  However, to date, Arocho has not specifically alleged who was involved in the conspiracy, when it occurred, or the actions the alleged conspirators undertook to deprive him of his privileges or rights.
   Finally, since Defendant's Motion for Summary Judgment will be granted on the merits, this Court need not address Defendant's request for qualified immunity.

Witmer's stop and temporary detention of Arocho and Rodriquez passes constitutional muster. Witmer had a reasonable suspicion that there was a violation of the motor vehicle code when he pulled over Rodriquez's vehicle because it did not have an official Pennsylvania state inspection sticker in the front driver's side windshield as required by law. Further, when he ordered Arocho and Rodriquez out of the vehicle Witmer continued to act well within the scope of the Plaintiffs' constitutional rights since he need not have further particularized suspicion to do so. Finally, since the VIN on Rodriquez's documents did not match the VIN on the car, Witmer's search of the vehicle, limited to what was necessary to ascertain whether the vehicle was stolen, was lawful. As a result of Rodriquez's failure to produce documents with a VIN that clearly matched the vehicle, Witmer was obliged to expand the scope of his inquiry to confirm Rodriquez's ownership. Probable cause for a search limited to verification of the VIN on the door and seatbelt is evident from these facts.[3]

**B.     Fourteenth Amendment**

A finding that there was no Fourth Amendment violation does not preclude a review as to whether Arocho was discriminatorily selected for a search in violation of the Fourteenth Amendment. United States v. Bradley, 299 F. 3d 197, 205 (2002). In support of his Fourteenth Amendment claim, Arocho avers that the facts and circumstances taken as a whole, particularly the consistently insulting and snide manner with which Witmer treated Arocho and the decedent, present a genuine issue of fact as to racial animus. Arocho offers his conjecture that "[i]t is

---

[3] This Court must also address Arocho's lack of standing on the issue of unreasonable search. It is well settled that a party lacks standing to assert a violation of his Fourth Amendment right against unreasonable searches where there is no reasonable expectation of privacy, such as where the claimant is not the proprietor of the property searched. Alderman v. United States, 394 U.S. 165, 174 (1969). Fourth Amendment rights are personal and cannot be vicariously asserted. Id. Arocho does not claim nor is there any evidence of his proprietary interest in the vehicle searched. Rodriguez, the vehicle owner, has been properly dismissed from this action. Thus, in the absence of a proper plaintiff to assert a claim for unreasonable search the issue is not properly before this Court.

inconceivable that Witmer would have treated a well-dressed white businessman in this manner." Arocho further asserts the claim that Witmer's rapid exit from the scene and dismissal of the tow truck driver present a triable issue of fact on Witmer's race-based motivation.

However, in order to assert a claim for racial profiling Arocho must successfully assert that Witmer's actions: (1) had a discriminatory effect; and (2) were motivated by a discriminatory purpose. Id. The record is devoid of any facts to support Arocho's Fourteenth Amendment claim.

The Complaint fails to establish any evidence of discriminatory animus. On the contrary, on September 9, 2001, the day of the incident in issue, Defendant pulled over numerous other vehicles for speeding and wrote five (5) citations for speeding, one for warning, one citation for failing to have child restraints, and one for failing to have a proper registration card none of which have been revealed as being Hispanic or other minority. Reply 10-11. Arocho has failed to supplement the record with any issue of material fact evidencing discriminatory selection of his car for search or Witmer's alleged discriminatory intent.

## V. CONCLUSION

Although Plaintiff has alleged a claim for violation of his rights pursuant to the First, Fourth, and Fourteenth Amendments, and 42 U.S.C. § 1985, he has failed present factual allegations in support thereof. For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted.[4] An appropriate order follows.

> BY THE COURT:
>
> /s/ Petrese B. Tucker
>
> _____
> **Hon. Petrese B. Tucker, U.S.D.J.**

---

[4] To date, Plaintiff has failed to identify the John Doe Defendants asserted in his Complaint therefore the entry of judgment applies to all Defendants in this cause of action.

9